**UNITED STATES of America,**
**Appellee,**

v.

**William Ernest ROSS, Appellant.**

**No. 715, Docket 72–1135.**

United States Court of Appeals,
Second Circuit.

Argued May 10, 1972.

Decided June 13, 1972.

John L. Altieri, Jr., New York City (Harry C. Batchelder, Jr., New York City, on the brief), for appellant.

Franklin B. Velie, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., and Peter F. Rient, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before FRIENDLY, Chief Judge, and McGOWAN* and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal from a conviction for a federal narcotics offense calls upon us to decide whether the district court erred in failing to sentence appellant under the provisions of either the Comprehensive Drug Abuse Prevention and Control Act of 1970[1] or the Narcotic Addict Rehabilitation Act of 1966.[2]

William Ernest Ross appeals from a judgment of conviction after a three day non-jury trial in the District Court for the Southern District of New York, David N. Edelstein, *Chief Judge*, finding him guilty of selling heroin hydrochloride, in violation of 21 U.S.C. §§ 173 and 174 (1964).[3] On January 11, 1972, Judge Edelstein sentenced Ross, a second offender, to the mandatory minimum term of ten years, required by 21 U.S.C. § 174 and 26 U.S.C. § 7237(d) (1964). On appeal, Ross contends that

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. 21 U.S.C. §§ 801–966 (1970).

2. 18 U.S.C. §§ 4251–55 (1970).

3. Sections 173 and 174 were repealed by Pub.L. No. 91–513, § 1101(a) (2), 84 Stat. 1291 (1970). By the terms of § 1105(a), the repealer became effective on May 1, 1971. However, as will be discussed *infra*, the repealer contained a saving provision, § 1103(a), as to prosecutions under §§ 173 and 174 for violations committed prior to May 1, 1971.

there was insufficient evidence to sustain his conviction and that the court erred in imposing the mandatory minimum sentence. For the reasons stated below, we affirm.

## I.

■ Viewing the evidence in the light most favorable to the government, as we must at this juncture, Glasser v. United States, 315 U.S. 60, 80 (1942), the evidence presented at trial adequately supported appellant's conviction.

■ The government established that on February 14, 1968, at approximately 5:30 P.M., John Coursey, a federal narcotics agent acting in an undercover capacity, was introduced by an informant to Ross at the latter's home in the Bronx. Ross told Coursey that he would not be able to consummate a heroin sale at that time, as his supplier had left prior to Coursey's arrival. Coursey and the informant agreed to wait for Ross at another address.

Following the departure of Coursey and the informant, Agent Raphael Halperin maintained surveillance on Ross' home. At approximately 5:40 P.M., Agent Halperin observed Ross emerge from his home and walk away.

At about 6:00 P.M., Ross arrived at the address where Agent Coursey and the informant were waiting. There Ross told Coursey that he had contacted his "man" and asked Coursey and the informant to meet him at his house at 7:00 P.M. Coursey and the informant returned to Ross' house at the appointed hour, at which time Ross sold Coursey five spoonfuls of white powder for $500. This powder was later determined to consist of 15.9 grams of 49.6% pure heroin and manitol.

Agent Halperin arrested Ross two months later, on April 19, 1968. At

trial Halperin testified that, at the time of Ross' arrest, he "expressed a willingness to cooperate . . . [and] spoke in fact about the case in question." Halperin further testified that, at a pre-arraignment interview by an Assistant United States Attorney, Ross "gave an approximation of the strength of the narcotics that he sold to Agent Coursey." Ross estimated that the heroin was 49.6% pure. Ross also admitted selling heroin by the spoonful for $500 an ounce.

At trial Agent Coursey was unable to identify Ross as the man who had sold him heroin on February 14, 1968. Coursey's inability to identify Ross nearly four years after the event, however, is not fatal to the government's case. Halperin's testimony and in-court identification of Ross, when combined with Coursey's testimony and Ross' own admissions, supplied sufficient evidence to support Judge Edelstein's judgment.

## II.

Ross' principal contentions on appeal relate to his being sentenced to the mandatory minimum term of ten years.

■ First, he challenges his sentence on the ground that, since the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the 1970 Act), which became effective May 1, 1971, repealed various federal narcotics laws, including the provisions under which Ross was sentenced,[4] and that, since his sentence was imposed after the effective date of the new Act, he was entitled to the benefits of its more liberal sentencing provisions, which, unlike the repealed laws, do not provide for a mandatory ten year minimum term of imprisonment for second offenders. Our Court, however, has specifically rejected this argument. United States v. Singleton, 460 F.2d 1148, 1155 (2 Cir. 1972);

---

4. 21 U.S.C. § 174 and 26 U.S.C. § 7237(d) (1964). If § 7237(d) did not apply, parole and probation would be available to Ross even though the provisions of the new Act did not apply to him. Absent § 7237(d), the general provisions of 18 U.S.C. § 3651 (1970) would apply. That section authorizes the suspension of sentence and grant of probation as to any offense not punishable by death or life imprisonment.

United States v. Fiotto, 454 F.2d 252, 254–55 (2 Cir.), cert. denied, 406 U.S. 918 (1972). See also United States v. Caraballo, 334 F.Supp. 843 (S.D.N.Y. 1971). While the Ninth Circuit has decided otherwise, United States v. Stephens, 449 F.2d 103 (9 Cir. 1971), we believe that there are cogent reasons for adhering to our previous decisions in *Fiotto* and *Singleton*.[5]

■ The 1970 Act specifically provided that "[p]rosecutions for any violation of the law occurring prior to . . . [May 1, 1971] shall not be affected by the [repeal] . . . [of former 26 U.S.C. § 7237(d)] . . . or abated by reason thereof." Pub.L.No. 91–513, § 1103(a), 84 Stat. 1201. Ross argues, and the Ninth Circuit held, that this saving clause does not apply to former § 7237(d), because prosecution ends with a judgment of conviction and sentencing is an entirely different procedure. It does violence to logic, we believe, to suggest that Congress did not intend "prosecutions" to include sentencing. An essential ingredient of any prosecution is sentencing. Indeed, the Federal Rules of Criminal Procedure provide that a judgment of conviction must set forth the defendant's sentence, in addition to the plea, the verdict and the adjudication. Fed.R.Crim.P. 32(b). Moreover, for purposes of appeal, a prosecution is not complete until sentence is imposed. Fed.R.App.P. 4(b). Accordingly, we hold that § 1103(a) of the 1970 Act required the district court to sentence Ross to a mandatory minimum term of imprisonment pursuant to former § 7237(d).

This conclusion is buttressed by 1 U. S.C. § 109 (1970), which provides:

"The repeal of any statute shall not have the effect to release or extin-

guish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall expressly so provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty. . . ."

It seems clear that this statute also required the district court to sentence Ross pursuant to § 7237(d). The 1970 Act did not expressly extinguish mandatory minimum sentences. While it may plausibly be argued that § 109 refers only to persons already sentenced, the contrary construction seems to us more reasonable. Furthermore, we cannot accept the Ninth Circuit's reasoning that the granting of probation or parole, which was not possible under § 7237(d), is not a release or extinguishment of a penalty. United States v. Stephens, *supra*, 449 F.2d at 106. It seems illogical to suggest that making parole or probation available as alternatives to prison is not a release or extinguishment of a penalty. While it is true that the granting of probation or parole does not extinguish a defendant's penal obligation, one would be hard pressed to find a prison inmate who did not view the unavailability of parole as a penalty.

■ We also find unpersuasive Ross' argument, accepted by the court in United States v. Stephens, *supra*, 449 F.2d at 105–06, that § 7237(d) is not the type of statute which § 109 was intended to save. Ross essentially contends that, since § 7237(d) does not make certain conduct criminal or define offenses as to which prosecution need be sustained and abatement avoided, the statute merely provides for a "remedy", as distinguished from a substantive liability. Ross further argues that the object of

---

5. Ross argues that *Fiotto* is not controlling, because Ross' conviction, unlike Fiotto's, occurred after the effective date of the new Act. That Ross' second conviction came after the effective date, however, is irrelevant. *Fiotto* and *Singleton* hold that former § 7237 must apply when the crime was committed prior to the ef-

fective date of the new Act. Moreover, in *Singleton*, which was decided after oral argument of the instant case, appellant was sentenced to the mandatory minimum term of five years for a first offender as required by § 7237(b) and (d), even though he was convicted after the effective date of the new Act.

the federal saving provision, § 109, has never been thought to require the perpetuation of remedies or procedures. See Hertz v. Woodman, 218 U.S. 205, 218 (1910); United States v. Obermeier, 186 F.2d 243, 254–55 (2 Cir. 1950), cert. denied, 340 U.S. 951 (1951). We do not believe, however, that the provision for mandatory minimum sentences can be termed a "remedy". Rather, as indicated above, we consider § 7237(d) as a statute providing for a penalty. The federal saving statute specifically provides that the repeal of any statute shall not extinguish "any penalty . . . or liability incurred under such statute. . . ."

■ We also reject Ross' argument that § 109 was intended to prevent only technical abatement and was not intended to apply to a situation such as the instant one.[6] Ross' reliance on Hamm v. Rock Hill, 379 U.S. 306 (1964), for this analysis of § 109 is misplaced. There, in dicta, the Supreme Court indicated that § 109 would not preclude the abatement of a prosecution for violating a hypothetical federal criminal trespass statute in the face of the 1964 Civil Rights Act. As the opinion pointed out, that case involved a superseding noncriminal statute which gave the appellants hitherto unenjoyed substantive rights to public accommodations. Thus, stated the Court, if the trespass statutes had been federal laws, prosecutions under them could not be continued after the enactment of the 1964 Act. The Court said that § 109 would not have saved the hypothetical statute, because the federal saving provision "was meant to obviate mere technical abatement. . . ." 379 U.S. at 314. In reaching

this conclusion, the Court in *Hamm* relied on United States v. Chambers, 291 U.S. 217, 222–24 (1934), where the Court had held that, despite the federal saving statute, the ratification of the twenty-first amendment repealing prohibition abated a prosecution under the National Prohibition Act. Somewhat analogous to the situation in *Hamm*, the ratification of the twenty-first amendment had the effect of restoring a substantive right, the exercise of which previously had been the object of criminal sanctions. The instant case is entirely different. The conduct for which § 7237(d) required mandatory minimum sentences continues to be a crime under the new Act. Thus, the prosecution of Ross for violating 21 U.S.C. §§ 173 and 174 clearly was saved by § 109. Moreover, since we hold that sentencing is an integral part of the prosecution of an accused, § 109 also saved the sentencing provisions of § 7237(d).

An earlier decision of our Court supports our conclusion that the district court was required to sentence Ross pursuant to former § 7237(d). In United States v. Kirby, 176 F.2d 101, 104 (2 Cir. 1949), the defendants were convicted under a mail robbery statute. The offense was committed prior to the effective date of a superseding statute, but sentence was imposed after that date. On the basis of § 109, as well as language in the superseding statute similar to § 1103(a), our Court held that sentencing under the old, superseded provisions, pursuant to which the prosecutions were initiated, was proper. See also United States v. Taylor, 123 F. Supp. 920 (S.D.N.Y.1954), aff'd, 227 F. 2d 958 (2 Cir. 1955), cert. denied, 353 U.S. 961 (1957).

6. The term "technical abatement" is used to describe the effect at common law of repeal of a statute on a pending action. The repeal of a statute or change in the definition or punishment of an offense abrogated the statute and abated any prosecution commenced thereunder, unless the repealing statute expressly provided to the contrary. For example, in Norris v. Crocker, 54 U.S. (13 How.) 429 (1851), the Supreme Court held that the Fugitive

Slave Law of 1850 repealed a penalty granted masters under an act of 1793 and barred an action for recovery of the penalty prescribed in the act of 1793, even though the action was pending at the time of repeal. Furthermore, in United States v. Tynen, 78 U.S. (11 Wall.) 88 (1871), the substitution of a new statute with a greater schedule of penalties was held to abate a previous prosecution.

■ Ross also attacks his sentence on the ground that the district court erred in not considering him for disposition under Title II of the Narcotic Addict Rehabilitation Act (NARA), 18 U.S.C. §§ 4251–55 (1970). Disposition under NARA, however, is available only for addicts. Here the preponderance of the evidence indicated that Ross was not in fact addicted at the time of sentencing. True, the government stipulated that Ross was an addict at the time of his arrest in February of 1971. But the government never conceded that Ross was an addict at the time of sentencing. Ross himself testified at trial that he was not an addict in 1971. Furthermore, Ross remained in custody from his arrest in February of 1971 until his sentencing in January of 1972. When one considers Ross' incarceration for eleven months prior to sentencing, together with his own contention that he had conquered his addiction by 1971, the government's stipulation regarding Ross' condition in February of 1971 is not controlling.

Our view that Ross was not entitled to consideration under NARA is buttressed by defense counsel's failure specifically to request disposition under this Act. During the course of the proceedings, defense counsel did request rehabilitative sentencing, but we read these pleas, and we believe the district court reasonably interpreted them, as directed solely at the issues of the mandatory minimum term of imprisonment and treatment for his mental illness. There are cases which have held that where it is obvious that the defendant is an addict, the court must consider the options under NARA on its own initiative, and failure to do so requires a remand for resentencing. See United States v. Williams, 407 F.2d 940, 945 (4 Cir. 1969). The *Williams* decision was premised on the belief that a convicted defendant who is clearly addicted is entitled to have the court exercise its discretion as to whether to use the rehabilitative provisions of the Act. Where, as here, however, there is substantial evidence that the defendant was not in fact addicted at the time of sentencing, the district court cannot be faulted for not exercising its discretion in the absence of a request.

■ Finally, Ross contends that imposing mandatory minimum terms of imprisonment constitutes cruel and unusual punishment in violation of the eighth amendment. This claim has been repeatedly rejected. United States v. Lozaw, 427 F.2d 911, 917 (2 Cir. 1970); United States v. Drotar, 416 F.2d 914, 917 (5 Cir. 1969); Sperling v. Willingham, 353 F.2d 6, 7 (7 Cir. 1965), cert. denied, 384 U.S. 962 (1966); Stewart v. United States, 325 F.2d 745, 746 (8 Cir.), cert. denied, 377 U.S. 937 (1964). Despite the fact that the sentencing provisions of 21 U.S.C. § 174 and 26 U.S.C. § 7237(d) have been in effect for a long time, Ross is unable to cite a single case, and we have found none, where these provisions have been held constitutionally invalid. We decline the invitation to rule to the contrary at this late date.

■ We likewise see no merit in Ross' claim that the mandatory minimum sentence was unconstitutional as applied to him because it provided for no treatment for his drug addiction or mental illness. As indicated above, there was substantial evidence that Ross was not addicted at the time of his sentencing. Furthermore, while there was testimony that Ross was suffering from some form of mental illness, there are facilities and personnel available under the jurisdiction of the Federal Bureau of Prisons—including Lewisburg where Ross presently is incarcerated—to assist him with his mental problems.

Affirmed.